FILED
2014 Oct-30  PM 03:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **MARY LYNN MATTHEWS,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | } Case No.:   4:12-cv-00543-MHH |
| | } |
| **CAROLYN COLVIN,** | } |
| **Acting Commissioner of Social** | } |
| **Security,** | } |
| | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

### I. INTRODUCTION

On October 22, 2007, the claimant, Mary Lynn Matthews, applied for supplemental security income under Title XVI of the Social Security Act. (R. 15). According to Ms. Matthews, she became disabled on March 2, 2003 because of panic attacks and anxiety. The Commissioner of Social Security denied Ms. Matthews's claim both initially and on reconsideration. Ms. Matthews filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on October 16, 2009. (R. 15, 146). In a decision dated April 13, 2010, the ALJ found that Ms. Matthews was not disabled as defined by the Social Security Act and, thus, was ineligible for supplemental security income. (R. 23). On December 15, 2011, the Appeals Council denied Ms. Matthews's request for review, so that the ALJ's decision became the final decision of the Commissioner of the Social Security

Administration. (R. 1-3). The claimant has exhausted her administrative remedies, and this Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this Court reverses the decision of the Commissioner and remands this case for further consideration.

## II. ISSUES PRESENTED

Ms. Matthews presents the following issues for review: (1) whether the ALJ properly discredited the opinion of treating physician Dr. Tuck; (2) whether the ALJ fulfilled his duty to develop the record; and (3) whether the ALJ adequately considered the opinion of Dr. Beidleman.

## III. STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's "factual findings with deference" and her "legal conclusions with close scrutiny."" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or

decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether an individual is entitled to disability benefits, the Commissioner employs a five step, sequential evaluation process:

> (1) is the person presently unemployed?; (2) is the person's impairment severe?; (3) does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?; (4) is the person unable to perform his or her former occupation?; and (5) is the person unable to perform any other work within the economy?

>An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

## V. FACTS

Ms. Matthews has an eighth grade education. She was thirty-seven at the time of her administrative hearing. (R. 34). She previously worked part-time as a janitor; however, her earnings did not rise to the level of substantial gainful activity. (R. 50). Ms. Matthews alleges disability based on her anxiety, anemia and anorexia. She testified that she has had these problems since she was sixteen. (R. 36).

*Medical Records Concerning Physical and Mental Limitations*

In September 2005, Ms. Matthews went to Cooper Green Hospital with complaints of a panic attack, dizziness, and an irregular heartbeat. (R. 233). Treatment records indicate a diagnosis of anxiety disorder and prescriptions for Klonopin and Zoloft; however, Ms. Matthews could not afford to refill her prescriptions. (R. 234). In March 2006, Ms. Matthews sought treatment at Trinity Medical Center for a panic attack caused by an adverse reaction to the antidepressant Paxil. (R. 301). On December 28, 2006, Ms. Matthews went to the emergency

4

room at Trinity Medical Center with complaints of dizziness.  She stated that she stopped taking her medications because she was pregnant.  (R. 250).

On April 29, 2008, Dr. Milton G. Norrell completed a Physical Capacity Evaluation, a Clinical Assessment of Pain, and a Clinical Assessment of Fatigue/Weakness.  These forms contained only short yes or no questions, checkboxes, and multiple choice questions.  Dr. Norrell found that Ms. Matthews could lift ten pounds occasionally but never push, pull, stoop, or reach.  He also opined that pain and fatigue/weakness would negatively affect Ms. Matthews's performance of daily activities or work and that she had no side effects from her medications.  In response to a question that asked whether Ms. Matthews had a medical condition consistent with her pain and fatigue/weakness, he wrote "not sure."  (R. 352-56).[1]

In September 2008, Ms. Matthews saw Dr. James M. Tuck for leg pain, dizziness, and anxiety.  Dr. Tuck indicated that Ms. Matthews already was taking Klonopin.  He prescribed Mirapex and Lexapro as well.  (R. 448).

Two months later, Ms. Matthews visited the Trinity Medical Center emergency room, complaining of dizziness.  Dr. John Croushorn noted that Ms. Matthews suffered from anorexia nervosa and acute anxiety, and he ordered an IV fluid insertion.  Dr. Croushorn observed that Ms. Matthews weighed only 84

---

[1] At the administrative hearing, the claimant's attorney indicated that Dr. Norrell was a treating physician; however, Dr. Norrell closed his practice and did not provide the medical records supporting his opinions.  (R. 31).

pounds and appeared "malnourished." He also noted that Ms. Matthews was taking iron supplements and Klonopin. (R. 411-12). Two days later, Ms. Matthews again sought treatment at Trinity Medical Center's emergency room. Dr. Kenneth Olson examined Ms. Matthews. He described her as "a wasted 36-year-old Caucasian female." (R.406). Dr. Olson diagnosed severe protein malnutrition, symptomatic iron-deficiency anemia, dehydration, failure to thrive, weight loss, malaise, generalized weakness, lightheadedness, dizziness, and fatigue. Dr. Olson also noted that Ms. Matthews had a history of panic attacks. (R. 405).

On January 16, 2009, Dr. Tuck saw Ms. Matthews again and noted that she was not doing well with the Mirapex. He discontinued the Mirapex, continued the Klonopin, and added Vitamin C. (R. 447). In April 2009, Ms. Matthews returned to Dr. Tuck. She complained of a panic attack that occurred because she was out of her medication. Dr. Tuck refilled her Klonopin prescription and had her continue taking Vitamin C and iron supplements. (R. 446). On September 17, 2009, Ms. Matthews saw Dr. Tuck for a follow-up visit, and he refilled her prescriptions. (R. 439).

Dr. Tuck completed a Physical Capacity Evaluation, a Clinical Assessment of Pain, and a Clinical Assessment of Fatigue/Weakness on October 15, 2009. Dr. Tuck found that Ms. Matthews could lift five pounds occasionally, sit for two hours in an eight hour workday, stand for two hours in an eight hour workday and

occasionally push or pull arm or leg controls. He opined that her pain was present but did not prevent functioning. When asked whether Ms. Matthews had a medical condition consistent with her pain, he wrote, "? [p]robable osteoporosis." He then opined that her fatigue and weakness would negatively affect her performance of daily activities and work. He stated that Ms. Matthews's iron deficiency anemia condition was consistent with her alleged level of fatigue and weakness. (R. 440-44).

On November 24, 2009, Dr. William B. Beidleman performed a consultative psychiatric examination. Dr. Beidleman found that Ms. Matthews had mild impairments in her ability to understand, remember, and carry out complex instructions. He also stated that she had moderate impairments in her ability to interact with a supervisor and to respond to workplace changes. (R. 454-56). He gave her a Global Assessment of Functioning ("GAF") score of 55 and opined that "[i]t is likely that she would have difficulty coping with ordinary work pressures." (R. 459). He stated that the "[p]rognosis for favorable reponse to treatment is poor given that she is not in active mental health treatment for her anxiety and eating disturbance." (R. 459).

*ALJ Hearing Testimony*

After the Commissioner denied Ms. Matthews's request for supplemental security income, Ms. Matthews requested and received a hearing before an ALJ.

(R. 30). At the hearing, Ms. Matthews testified that her anorexia anemia caused her to feel sleepy and prevented her from working. She stated that her anorexia caused her to drop out of school in the ninth grade. (R. 35-36). She asserted that low iron levels would make her feel like she was going to pass out; however, she acknowledged that her iron pill helped with her fatigue. (R. 40). She also stated that she needed to take a two hour nap daily. (R. 41).

Regarding her panic attacks, Ms. Matthews testified that her head would tingle, and she would have dizziness and hot flashes. She stated that her heart would skip a beat, and she would feel like she was about to faint. She testified that being in public situations would often trigger these panic attacks. Ms. Matthews described being in a crowd of people "like being in traffic" and stated that she was very claustrophobic. (R. 37-39). She testified that she quit a previous job at Comfort Inn after experiencing a panic attack at work. (R. 45).

Ms. Matthews denied that she experienced side effects from the medication for her conditions other than "a little bit of tiredness." (R. 42). She stated that she had been taking Klonopin for seven years. She testified that it "help[ed her] very, very much." She noted that she had previously taken Zoloft and Paxil, but they had given her hallucinations. (R. 44).

Ms. Matthews stated her daily activities, apart from her daily nap, included helping her kids with their homework, washing the dishes, and doing the laundry.

She testified that she could wash only a few dishes at a time before she needed to sit down. She stated that the laundry was "no problem," although she experienced back pain when she removed clothes from the dryer. (R. 42-43). She also testified that she did not drive or have a driver's license because of her anxiety. (R. 48).

After Ms. Matthews testified, the ALJ called Dr. William F. Green to testify as a vocational expert. The ALJ asked Dr. Green to consider a hypothetical individual who could do only simple tasks, could maintain concentration for two hours at a time, would be able to complete an eight-hour work day with customary breaks, could have only casual contact with the general public and co-workers, would be limited to non-confrontational supervision and should have only gradual changes in the workplace. The ALJ added that the individual probably would "do best" at a worksite which was open and that offered a work space apart from others. (R. 51). Dr. Green replied that the space stipulation was problematic and prevented him from identifying jobs that would be available to the individual. (R. 51-52). The ALJ dropped the space limitation and posed the hypothetical to Dr. Green again. Dr. Green opined that such an individual could work as a janitor, food preparer, or inspector; however, requiring an open workspace would preclude employment. (R. 51-52). Additionally, Dr. Green testified that either panic attacks on a consistent basis or missing two days of work per month would prevent Ms. Matthews from performing these jobs. (R. 53).

9

*The ALJ's Decision*

On April 13, 2010, the ALJ issued a decision in which he concluded that Ms. Matthews was not disabled under the Social Security Act. (R. 23). Tracking the five step evaluation process, the ALJ first found that Ms. Matthews had not engaged in substantial gainful activity since October 22, 2007, the application date. Next, the ALJ found that Ms. Matthews suffered from the severe impairments of panic disorder, restless leg syndrome, dysthymic disorder, probable mixed personality disorder, anorexia nervosa, and anemia; however, he concluded that Ms. Matthews did not have an impairment or combination of impairments that manifested the specific signs and diagnostic findings required by the Listing of Impairments. (R. 17). The ALJ determined that Ms. Matthews had the residual functional capacity ("RFC") to perform light work, except she could perform only simple tasks; maintain attention for two hours at a time; have casual contact with the general public and co-workers; and have non-confrontational supervision and gradual workplace changes. Additionally, the ALJ found that Ms. Matthews could complete an eight-hour workday with customary breaks. (R. 19).

In making these findings, the ALJ determined that Ms. Matthews did not have a medically determinable impairment that could reasonably be expected to cause all the alleged symptoms. (R. 19). The ALJ gave little weight to the opinion of Dr. Norrell because no objective evidence supported Dr. Norrell's statements.

Similarly, the ALJ gave limited weight to Dr. Tuck's assessment of Ms. Matthews. (R. 21-22). The ALJ found that Dr. Beidleman's consultative examination supported his RFC finding. (R. 22).

Then, the ALJ determined that Ms. Matthews had no past relevant work, but based on his RFC determination and the testimony of the vocational expert, the ALJ found that jobs existed in the national economy that Ms. Matthews could perform. Thus, the ALJ concluded that Ms. Matthews was not disabled under the Social Security Act. (R. 22-23).

## VI. DISCUSSION

After careful review, the Court finds that although the ALJ he applied correct legal standards, he overlooked significant evidence that is favorable to the claimant. For example, Ms. Matthews argues that the ALJ erred by failing to give sufficient weight to the opinion of treating physician Dr. Tuck that her fatigue and weakness "is present to such an extent as to negatively affect adequate performance of daily activities or work." (Pl. Brief, pp. 6-8; R. 443). The Court agrees.

Normally, "the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *see also Lamb v. Brown*, 847 F.2d 698, 703 (11th Cir. 1998) (same). The ALJ has good cause for rejecting a treating

11

physician's opinion when "the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440).

The ALJ placed little weight on Dr. Tuck's opinions because of perceived discrepancies between Ms. Matthews's medical records and Dr. Tuck's finding that Ms. Matthews's limitations would negatively affect adequate performance of work. The ALJ noted that when Dr. Tuck first saw Ms. Matthews, Dr. Tuck found that she was neurologically intact, her gait was normal, and she had a full range of motion. The ALJ cited a Trinity Medical Center record indicating that Ms. Matthews had no back problems except very minimal scoliosis. (R. 21). Ms. Matthews contends that these citations are not relevant because "[s]he has never alleged any back problems to be disabling. Her most severe symptoms, as testified to, are fatigue, dizziness, sleepiness (related to anorexia and anemia) and nervousness and panic attacks." (Pl.'s Br. 8).

Dr. Tuck's medical records and his assessment support Ms. Matthews's argument. In his assessment, Dr. Tuck indicated that Ms. Matthews has few limitations due to physical pain (R.441-42); however, she is significantly limited because of fatigue and weakness caused by anemia. (R.443). Dr. Tuck's medical

records and other emergency room records are consistent with Dr. Tuck's assessment. As outlined above, between 2008 and 2009, Ms. Matthews received medical treatment on a number of occasions because of malnutrition, symptomatic iron-deficiency anemia, weakness, dizziness, fatigue, and panic attacks. (*See* pp. 5-6 *supra).*

The ALJ accurately observed that a medical record from Trinity Medical Center in June 2009 states that Ms. Matthews then "demonstrated normal behavior appropriate for age and situation." (R. 21, 365). And it is true, as the ALJ noted, that Dr. Tuck did not provide a narrative in support of his assessment of Ms. Matthews's fatigue and weakness. If the ALJ had before him only a checkbox, multiple choice assessment tool and a medical record that indicated that Ms. Matthews generally was healthy, the Court would not hesitate to affirm. *See Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1304 (S.D. Fla. 2012) ("Because [the physician] saw Claimant only two times, completed a conclusory checkbox form, failed to support her opinion with acceptable medical evidence, and failed to provide treatment notes, the ALJ properly discounted her opinion."). The record here, though, is much more robust. The ALJ did not focus on the aspects of the Ms. Matthews's medical records that concern the limitations that form the basis of her disability claim.

The ALJ's opinion omits other relevant evidence.[2]  For instance, the ALJ relied on Dr. Beidleman's opinion.  The ALJ stated that his RFC "is supported by the opinion of Dr. Beidleman."  (R. 22).  The ALJ cited Dr. Beidleman's checkbox answers that indicate that Ms. Matthews is "only mildly limited in the ability to interact appropriately with the public and coworkers although she [is] moderately limited in the abilities to interact appropriately with supervisors and respond appropriately to usual work situations and to changes in a routine work setting" and "has mild difficulties" with "concentration, persistence or pace" (R.18, 454-55); however, the ALJ's opinion does not mention Dr. Beidleman's finding in his narrative psychological evaluation that "[i]t is likely that [Ms. Matthews] would have difficulty with ordinary work pressures."  (R. 459).  The ALJ acknowledged in his opinion Dr. Beidleman's finding that Ms. Matthews's "[p]rognosis for favorable response to treatment is poor given that she is not in active mental health treatment for her anxiety and eating disturbance" (R. 17, 459), but he did not consider what impact, if any, this finding had on Ms. Matthews's ability to secure and maintain a job.

Significantly, the ALJ used Dr. Beidleman's checkbox answers to support his decision to change a hypothetical question that he posed to Dr. Green, the vocational

---

[2] *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) ("a reviewing court is under a duty to examine the record as a whole to ensure that the decision is supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 1427 (1971)); *Aderholt v. Astrue*, No. 6:11-CV-00829-KOB, 2012 WL 2499164, *1 (N.D. Ala. June 26, 2012)(same).

expert who testified at Ms. Matthews's hearing. Initially, the ALJ included in his hypothetical a qualification that Ms. Matthews "would do best in an open work site or by herself away from coworkers." (R.20; *see also* R. 51). When Dr. Green indicated that this qualification would eliminate jobs for which Ms. Matthews might be qualified, the ALJ deleted the qualification from his hypothetical. (R. 51-52). In his opinion, the ALJ explained that:

> [At the] hearing the undersigned included in the hypothetical question to the vocational expert a provision that the claimant would do best in an open work site or by herself away from coworkers. The undersigned did not include that provision in the residual functional capacity stated above because, in his report, Dr. Beidleman stated that the claimant was mildly limited with regard to her ability to interact with coworkers and the public.

(R. 20). Dr. Beidleman's checkbox answers must be considered in conjunction with his narrative finding that Ms. Matthews probably would have "difficulty with ordinary work pressures, and his conclusion that the "[p]rognosis for favorable response to treatment is poor," especially in light of the uncontroverted record that demonstrated that Ms. Matthews has had anxiety since she was 16, and she has panic attacks when she is in public. (R. 36-39). The ALJ's hypothetical question should fully account for all of Ms. Matthews's impairments, including her panic disorder. *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011) ("Because the ALJ asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of Winschel's impairments, the

vocational expert's testimony is not 'substantial evidence' and cannot support the ALJ's conclusion that Winschel could perform significant numbers of jobs in the national economy.").

## VII. CONCLUSION

For the reasons stated above, the Court remands this matter to the ALJ for further proceedings. The Court will enter a remand order consistent with this memorandum opinion.

**DONE** and **ORDERED** this October 30, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE